**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| Larry Dean Watkins, | : | Case No. 3:08CV00742 |
| Plaintiff, | : | |
| v. | : | **MEMORANDUM DECISION AND ORDER** |
| City of Toledo, | : | |
| Defendants. | : | |

The parties have consented to have the Magistrate enter judgment in this employment discrimination case filed pursuant to 42 U. S. C. § 2000e. Pending before the Court are Defendant City of Toledo's (City's) Amended Motion for Summary Judgment (Docket No. 44), Plaintiff's Opposition (Docket No. 50) and Defendant City's Reply (Docket No. 56). For the reasons that follow, Defendant City's Amended Motion for Summary Judgment is granted.

## I. FACTUAL BACKGROUND

Plaintiff asserts the following facts. In November 1997, Defendant City hired Plaintiff as a utility worker at the Collins Park Water Treatment Facility (Collins Park) (Docket No. 29, ¶ 2). While at Collins Park, Plaintiff was elected Steward for the American Federation of State, County and Municipal Employees (AFSCME) Local 7, Division 3; consequently, Plaintiff developed a working relationship with most of the union officials and other stewards. During the course of his tenure as steward, Plaintiff developed a reputation for his persistence in the pursuit of union contract matters (Docket No. 29, ¶ 3).

In 2004, Plaintiff was promoted to the position of inspector. The performance of the job of inspector was subject to the terms of the AFSCME Local 7 agreement (Docket No. 29, ¶ 5).

While working as a meter reader for Defendant City's Water Department, Plaintiff started taking anti-anxiety/depression prescription drugs because of the angst and frustrations of working in what he considered a "hostile environment" (Docket No. 29, ¶s 4 & 6). The hostile work environment arose from an allegation by a coworker, Donald Watras, that Plaintiff had threatened him. Apparently Donald Watras also revealed to Defendant City that Plaintiff had taken gasoline for his personal use from the city's supply (Docket No. 29, ¶ 7).

Plaintiff was charged with violence in the workplace on October 5, 2006 (Docket No. 29, ¶ 8). On October 6, 2006, Donald Watras and his spouse requested a protective order against Plaintiff in the Toledo Municipal Court (Docket No. 29, ¶ 9). Plaintiff's home was searched and he was arrested on October 9, 2006 (Docket No. 29, ¶ 10). At trial on November 2006, Judge Francis X. Gorman found Plaintiff not guilty (Docket No. 29, ¶ 12; Docket No. 50, Exhibit 1, p. 44).

Trial on a November 27, 2006, Temporary Protective Order was held on December 20, 2006, and Plaintiff was found not guilty. Defendant City suspended Plaintiff without pay (Docket No. 29, ¶ 13). After a hearing conducted on January 3, 2007, Plaintiff was terminated from his job with Defendant City (Docket No. 29, ¶ 14).

## II. PROCEDURAL BACKGROUND

On February 10, 2007, Plaintiff filed a request for an investigation with the State Employment Relations Board (SERB) (Docket No. 29, ¶ 18).

On February 12, 2007, Plaintiff filed charges against AFSCME's union steward and chief union steward (Docket No. 29, ¶ 19). The AFSCME determined, on March 6, 2007, that there were no actions

by the union that denied or violated any rights under the collective bargaining agreement (Docket No. 29, ¶ 21).

The Office of Unemployment Compensation determined that Plaintiff's termination was without just cause and allowed his claim for unemployment benefits on February 26, 2007 (Docket No. 29, ¶ 20).

Plaintiff filed charges with the Equal Employment Opportunity Commission (E.E.O.C.) on August 27, 2007 (Docket No. 29, ¶ 23). A right-to-sue- letter was issued on January 25, 2008 (Docket No. 29, ¶ 24). Plaintiff filed a charge claiming discrimination based on religion and disability on October 4, 2007 (Docket No. 50, Exhibit 6).

On March 26, 2008, Plaintiff filed a complaint in this Court naming as Defendants the City and Ohio Counsel 8 (Docket No. 1). On June 12, 2008, Defendant Ohio Counsel 8 filed a Motion to Dismiss and Memorandum in Support asserting that the Court lacked subject matter jurisdiction and/or that Plaintiff had failed to state a claim upon which relief may be granted (Docket No. 10). The Court entered an order granting the Motion to Dismiss AFSCME as a party (Docket No. 26). Plaintiff opposes Defendant City's Motion and Amended Motion for Summary Judgment.

### III. MOTION FOR SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." *Reed v. International Union, United Automobile, Aerospace and Agricultural Implement Workers of America,* 569 F.3d 576, 578 -579 (6th Cir. 2009) (*citing* FED. R. CIV. P. 56(c)). All evidence, facts, and inferences must be reviewed in the light most favorable to the nonmoving party. *Id.* (*citing Matsushita Electric Industrial Company v. Zenith Radio Corporation,* 106 S.Ct. 1348, 1356 (1986)). In order to defeat a summary judgment motion, the nonmoving party "must

show sufficient evidence to create a genuine issue of material fact." *Id.* (*citing Prebilich-Holland v. Gaylord Entertainment Company,* 297 F.3d 438, 442 (6th Cir. 2002) (*citing Klepper v. First American Bank,* 916 F.2d 337, 342 (6th Cir. 1990)). The nonmoving party must provide more than a scintilla of evidence. *Id.* (*citing Anderson v. Liberty Lobby, Incorporated,* 106 S. Ct. 2505, 2512 (1986)). That is, the nonmoving party must present evidence sufficient to permit a reasonable jury to find in its favor. *Id.* Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* (*citing Celotex Corporation v. Catrett,* 106 S. Ct. 2548, 2552 (1986); *Hartsel v. Keys,* 87 F.3d 795, 799 (6th Cir. 1996)).

## IV. DISCUSSION

Plaintiff presents seven claims for relief. First, he was discriminated against by Defendant City for his religious beliefs in violation of Title VII. Second, Plaintiff was discriminated against by Defendant City for his religious beliefs in violation of OHIO REV. CODE § 4112.02(A). Third, Plaintiff was discriminated against by Defendant City based on his disability in violation of 42 U. S. C. § 12111. Fourth, Plaintiff was discriminated against by Defendant City based on his disability in violation of OHIO REV. CODE § 4112.02(A). Fifth, Plaintiff asserts that Defendant City engaged in a course of conduct that caused serious emotional distress. Sixth, the Defendant City invaded Plaintiff's privacy. Seventh, Defendant City was negligent in its hiring, supervision and retention of its employees.

**A. CLAIM ONE: PLAINTIFF'S CLAIM OF UNLAWFUL DISCRIMINATION BASED ON RELIGION**

Plaintiff, an agnostic, claims that the predominate religion of his supervisors and co-workers was Catholicism. Defendant failed to accommodate Plaintiff's opposing point of view. Ultimately, Plaintiff was suspended and terminated because of his religion.

1. **STANDARD FOR REVIEW OF UNLAWFUL DISCRIMINATION CASES BASED ON RELIGION.**

Title VII makes it unlawful for an employer to "'discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's religion.'" *Tepper v. Potter*, 505 F. 3d 508, 513 (6th Cir. 2007) (*quoting* 42 U.S.C. § 2000e-2(a)(1)). It is also unlawful for an employer to limit, segregate or classify his or her employees in any way that would deprive the employee of opportunities or otherwise adversely affect the employee's status because of his or her religion. *Id.* (*quoting* 42 U. S. C. § 2000e(2)). Religion is defined to include all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he or she is unable to reasonably accommodate an employee's religious observance or practice without undue hardship on the conduct of the employer's business. *Id.* (*citing* 42 U. S. C. § 2000e(j)).

The employee bears the burden of establishing a prima facie case of religious accommodation. *Id.* To establish a prima facie case, an employee must show that he or she holds a sincere religious belief that conflicts with an employment requirement; that he or she informed the employer about the conflicts; and that he or she was discharged or disciplined for failing to comply with the conflicting employment requirement. *Id.* (citation omitted; *but see Lawson v. Washington*, 319 F.3d 498, 499-500 (9th Cir. 2003) (Berzon, J., dissenting from denial of rehearing en banc) (arguing that the failure to accommodate is itself a Title VII violation).

2. **DISCUSSION.**

The Magistrate finds that Plaintiff considers agnosticism a sincere religious belief. From the tenor of the depositions, Plaintiff advised his co-workers and supervisors of his religious beliefs. Plaintiff failed to identify and/or offer probative evidence that being an agnostic is incompatible with an

employment requirement or that he was discharged because he failed to comply with Defendant's employment requirements that were incompatible with his religious beliefs.  Plaintiff's first claim is dismissed since he cannot satisfy all of the prongs required to make a prima facie case for discrimination based on religion.

**B.  CLAIM TWO:  RELIGIOUS DISCRIMINATION IN VIOLATION OF OHIO REV. CODE § 4112.02(A).**

Plaintiff makes a similar argument in his second claim under Ohio law.  He argues that his employer condoned the harassment imposed by his co-workers because he was not a Catholic.  The adverse employment actions taken by Defendant City were because of his religious beliefs.

    **1.**    **STANDARD OF REVIEW**.

The Supreme Court of Ohio has held that federal case law interpreting Title VII of the Civil Rights Act of 1964, 42 U. S. C. § 2000e *et seq*., is typically applicable to cases involving alleged violations of OHIO REV. CODE § 4112.  *Kiehl v. University Hospital Health System-Heather Hill*, 2009 WL 1586326, 5 (N. D. Ohio 2009) (*citing Plumbers & Steamfitters Committee v. Ohio Civil Rights Committee*, 66 Ohio St.2d 192, 196, 421 N.E.2d 128 (1981)).  Thus, the court's consideration of federal case law applies equally to a plaintiff's state claims and any federal Title VII claims that may have been fairly set forth in the complaint.  *Id.* (*citing Mitchell v. Toledo Hospital,* 964 F.2d 577, 582 (6th Cir. 1992) (stating that the district court correctly "lumped together" plaintiff's Title VII and Ohio state law theories of discrimination)).

    **2.**    **DISCUSSION.**

For the same reasons discussed under federal law, Plaintiff is unable to make a prima facie case for discrimination based on failure to make a religious accommodation as required under state law.  Therefore, Plaintiff's state law claim for discrimination based on religion is dismissed.

### C.  CLAIM THREE: PLAINTIFF'S CLAIM OF DISCRIMINATION BASED ON DISABILITY.

As a result of employment stressors, Plaintiff claims that he developed physical and mental impairments, namely, anxiety, depression and diabetes. He claims that these impairments affect his ability to work, sleep, concentrate and interact with others. Consequently, when he was discharged, Plaintiff contends that he was disabled within the meaning of the American with Disabilities Act (ADA).

#### 1.  THE ADA STANDARDS OF DISABILITY.

Discrimination by a covered entity is prohibited against a qualified individual with a disability because of the disability of such individual in regard to the discharge of such employee. *Daugherty v. Sajar Plastics,* 544 F. 3d 696, 702-703 (6th Cir. 2008) (*citing* 42 U. S. C. § 12112(a)). Similarly, under Ohio law, any employer, because of a disability of any person, may not discharge without just cause or otherwise discriminate against that person in any matter directly or indirectly related to employment. OHIO REV. CODE § 4112.02 (Thomson Reuters 2009). Where the plaintiff seeks to establish a prima facie case by means of circumstantial evidence, the burden shifting framework of *McDonnell Douglas* is applied under both state and federal law. *Daughtery*, *supra,* 544 F. 3d at 703 (*citing Macy Hopkins County School Board of Education*, 484 F. 3d 357, 364 (6th Cir. 2007)). The plaintiff's burden at the summary judgment stage is merely to present evidence from which a reasonable jury could conclude that the plaintiff suffered an adverse employment action under circumstances which give rise to an inference of unlawful discrimination. *Id.*

#### 2.  STATUTORY FRAMEWORK FOR DISCRIMINATION BASED ON DISABILITY UNDER ADA.

In making a prima facie case of disability discrimination under the ADA, it is required that a plaintiff show: "(1) he or she is disabled; (2) otherwise qualified for the position, with or without reasonable accommodation: (3) suffered an adverse employment decision; (4) the employer knew or had

reason to know of the plaintiff's disability; and (5) the position remained open while the employer sought other applicants or the disabled individual was replaced." *Id.* (*citing Macy, supra*, 484 F. 3d at 365). The ADA defines a "disability" as (A) a physical or mental impairment that substantially limits one or more of the major life activities of such an individual; (B) a record of such impairment; or (C) being regarded as having such an impairment.  42 U. S. C. § 12102(2)(A)-(C) (Thomson Reuters 2009).  The ADA does not define "physical or mental impairment,"; however, the regulations promulgated by the EEOC under the ADA provide significant guidance.  *Butka v. J. C. Penney Company*, 359 F. Supp. 2d 649, 663 fn. 8 (N. D. Ohio 2004).  Under EEOC regulations, a "physical or mental impairment" is *any physiological disorder or condition,* cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems:  neurological; musculoskeletal; special sense organs; respiratory, including speech organs; cardiovascular; reproductive, digestive, genito-urinary; hemic and lymphatic; skin; and endocrine. *E.E.O.C. v. Watkins Motor Lines*, 463 F. 3d 436, 442 (6th Cir. 2006) (*citing* 29 C. F. R. § 1630.2(h)(1)). *Id.* (*citing* 45 C.F.R. § 84.3(h)(emphasis added); *Andrews v. State of Ohio,* 104 F.3d 803, 808 (6th Cir. 1997)).

      Plaintiff's medical history and/or treatment history show that his treating physician conducted a myriad of external inspections to determine the etiology of chest pain, depression, shortness of breath, gastrointestinal bleeding, increased glucose levels and psychiatric irritability (Docket Nos. 68, 69, 70, 71 & 72; Docket No. 70, p. 6/18).  Plaintiff was diagnosed with hyperlipidemia, depression and gastroentestinal reflux and he prescribed medication designed to treat diabetes mellitus. (Docket No. 70, p. 8/18).  In August 2004, the status of Plaintiff's sleep apnea, hypertension and diabetes mellitus, was stable (Docket No. 70, p. 2/18 & 14/18).  In October 2006, Xanax was prescribed to treat symptoms of anxiety (Docket No. 68, p.19/27).  At the least, these symptoms affected Plaintiff's neurological,

cardiovascular and endocrine systems. Clearly Plaintiff's diseases constitute a physical and mental impairment.

In his amended complaint, Plaintiff alleges that his abilities to sleep, concentrate, interact with other and a broad range of other activities is impaired by his physical and mental impairments. Assuming these accusations as true, Plaintiff's ability to engage in major life activities is purportedly curtailed by his depression. The Magistrate finds that this conclusion is consistent with a finding that Plaintiff's major life activities are purportedly affected by his impairments.

Plaintiff asserts that he is qualified, with or without accommodation, to perform his job. Defendant City did not dispute Plaintiff's allegation that he was qualified to perform the job without accommodations.

It is undisputed that Plaintiff suffered several adverse employment actions. During the course of addressing the charges against him, Plaintiff was separated from his employer without pay. He was subsequently discharged.

There is, however, a lack of definitive evidence that Defendant City knew or had reason to know of Plaintiff's impairments. Plaintiff asserts that knowledge of his use of medication was widespread among the workforce. In fact, he advised his immediate supervisor, Robert Holmes, that he suffered from stress and anger issues. However, Robert Holmes testified that he was not aware that Plaintiff suffered from any mental or physical impairment or that he took medication (Docket No. 61, p. 4/7, p. 14: 12-19). His co-worker, Kimberly Kubicek, recalled that Plaintiff "would go off on people" and then excuse his behavior by referring to his failure to take his medication. Consequently, she assumed he was on medication but was uncertain about the details (Docket No. 62, p. 4/36, p. 14: 19-24 & 15: 1-2). The manager of human resources, Patricia Pohl, denied any knowledge of Plaintiff's medical condition

(Docket No. 64, p. 5/43, p. 24; 7-14). The Magistrate does not conclude from this evidence that Defendant City knew or had reason to know that Plaintiff was disabled as defined under the ADA. As Plaintiff has not sustained the burden required to show compliance with the fourth prong of the discrimination standard imposed under the ADA, he has not shown a triable issue of material fact that will be reserved for trial.

**D.    CLAIM FOUR: PLAINTIFF'S DISABILITY DISCRIMINATION CLAIM PREDICATED ON A VIOLATION OF OHIO REV. CODE § 4112.02(A).**

In his fourth claim, Plaintiff alleges that during the course of employment, Plaintiff developed physical and mental impairments. He claims that these impairments affected his ability to work, sleep, concentrate and interact with others. Plaintiff was discharged based on his disability in violation of Ohio's prohibitions against disability discrimination.

**1.    STANDARD OF DISABILITY UNDER OHIO LAW.**

Under OHIO REV. CODE § 4112.02(A), it is unlawful for an employer, because of religion, to discharge without just cause. To establish a prima facie case of disability discrimination under Chapter 4112, an employee must show (1) that he or she was disabled; (2) that his or her employer took an adverse employment action against him/her at least in part because he or she was disabled; and (3) that he or she could safely and substantially perform the essential functions of the job in question despite his or her disability. *Grooms v. Supporting Council of Preventative Effort,* 157 Ohio App.3d 55, 69, 809 N.E.2d 42, 53 (2004) (*citing Hood v. Diamond Products*, 74 Ohio St.3d 298, 658 N.E.2d 738 (1996)). An employee may satisfy the third element of his/her prima facie case by showing that he or she could have performed the essential functions of the job with a reasonable accommodation, if necessary. *Id.* (*citing Shaver v. Wolske & Blue*, 138 Ohio App.3d 653, 663, 742 N.E.2d 164 (2000)). Once an employee establishes a prima facie case of disability discrimination, "the burden then shifts to the employer to set

forth some legitimate, nondiscriminatory reason for the action taken." *Id.* (*citing Hood, supra*). If the employer sets forth a legitimate, nondiscriminatory reason for the action, then the employee must demonstrate that the employer's stated reason was a pretext for impermissible discrimination. *Id.* Because the Ohio disability discrimination law is similar to the ADA, the regulations and cases interpreting the federal act may be consulted for guidance in interpreting Ohio law. *Wysong v. Dow Chemical Company*, 503 F. 3d 441, 450 (6th Cir. 2007) (*citing City of Columbus Civil Service Commissioner v. McGlone*, 82 Ohio St. 3d 569, 697 N. E. 2d 204, 206-207 (1998)).

### 2        DISCUSSION.

In the present case, the Magistrate has already determined that Plaintiff was disabled in light of his depression and diabetes mellitus. Plaintiff met the second element of his prima facie case because his employer took adverse employment action against him. Plaintiff's offer of proof is unpersuasive when the Magistrate considers whether he was discharged, at least in part, because of his disability. The evidence does not show that Plaintiff had a record of disability or that his employer considered him disabled. Since Plaintiff cannot satisfy the second prong of the test in Chapter 4112, he cannot establish a prima facie case that Defendant fired him, in part, because of his disability.

### E.        CLAIM FIVE:  SERIOUS EMOTIONAL DISTRESS.

Plaintiff states that Defendant City engaged in a pattern of harassment and false accusations that resulted in the initiation of a criminal investigation against him. Plaintiff further contends that this course of conduct was outrageous and beyond all possible bounds of decency in a civilized society. A reasonable person could not be expected to endure this treatment. Defendant acted intentionally toward Plaintiff with calculation to cause serious emotional upset.

### 1.        STATUTORY FRAMEWORK FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

To establish a claim of intentional infliction of emotional distress, a plaintiff is required to show (1) that the defendant intended to cause the plaintiff serious emotional distress; (2) that the defendant's conduct was extreme and outrageous; and (3) that the defendant's conduct was the proximate cause of plaintiff's serious emotional distress. *Scarabino v. East Liverpool City Hospital,* 155 Ohio App.3d 576, 577, 802 N.E.2d 188, 189 (2003) (*citing Phung v. Waste Management,* 71 Ohio St 408, 410, 644 N. E. 2d 286 (1994)). In defining "extreme and outrageous" conduct, the Supreme Court set a very high bar as provided in the RESTATEMENT OF THE LAW 2D, TORTS. *Id.* Liability will only be found where the conduct has been so outrageous that it goes beyond all possible bounds of decency and is so atrocious that it is "utterly intolerable in a civilized community." *Id.* (*citing Reamsnyder v. Jaskolski,* 10 Ohio St.3d 150, 153, 462 N.E.2d 392 (1984)). Rarely will offensive conduct reach the level necessary to support a claim for intentional infliction of emotional distress. *Id.* "Only the most extreme wrongs, which do gross violence to the norms of a civilized society, will rise to the level of outrageous conduct." *Id.* (*citing Brown v. Denny*, 72 Ohio App.3d 417, 423, 594 N.E.2d 1008 (1991)). In *Yeager v. Local Union 20,* 6 Ohio St.3d 369, 453 N.E.2d 666 (1983), the Supreme Court described extreme and outrageous conduct as follows:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'

**2.     DISCUSSION.**

When the standard is applied to this case, it appears from Plaintiff's own description of his

reputation and Kimberly Kubicek's testimony that Plaintiff was an outspoken proponent. The weight of the evidence shows that Plaintiff made a statement or statements that a co-worker perceived as a viable threat during a time in our society when such threats are seriously pondered. There is no evidence that Defendant City intended to cause him serous emotional distress as retribution for his behaviors. Furthermore, there is no evidence that under the circumstances of the discharge, Defendant City's conduct was extreme and outrageous.

### F.     CLAIM SIX:  INVASION OF PRIVACY

Plaintiff contends that Defendant City published false accusations against him to their employees, law enforcement officials, customers, suppliers, vendors and union officials. These representations held Plaintiff in a false light and/or wrongfully intruded into his private activities and caused outrage or mental suffering, shame and humiliation.

#### 1.     STANDARD OF REVIEW FOR INVASION OF THE RIGHT TO PRIVACY

Under Ohio law, "[a]n actionable invasion of the right of privacy is the unwarranted appropriation or exploitation of one's personality, the publicizing of one's private affairs with which the public has no legitimate concern, or the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities." *Amadio v. Skovira,* 191 F. Supp.2d 898, 902 (N. D. Ohio 2002) (*citing Housh v. Peth*, 165 Ohio St. 35, 133 N.E.2d 340, syllabus (1956)). In order to sustain an invasion of privacy claim, a plaintiff must establish that defendants intruded into his or her private affairs and that such an intrusion would "shock the ordinary person to the point of emotional distress." *Id.* (*citing Haller v. Phillips,* 69 Ohio App.3d 574, 577, 591 N.E.2d 305 (1990)). An invasion of privacy claim "must involve the viewing of affairs that are private and not in public view." *Id.* (*citing York v. General Electric Co.,* 144 Ohio App.3d 191, 194, 759 N.E.2d

865 (2001)).

## 2. DISCUSSION.

Plaintiff does not identify a specific claim to which the public had no concern. The false accusations were publically presented first in the arrest and trial. The record of the trial and the trial proceeding were available for public viewing. Divulging that information which derived from the arrest and trial to the customers, suppliers, vendors and union officials did not implicate a privacy right. Plaintiff failed to explain how divulging of this information resulted in an unwarranted appropriation or exploitation of Plaintiff's personality. This claim, too, must be dismissed as a matter of law.

Even if Plaintiff had stated a cognizable legal claim for invasion of privacy, Defendant City is immune from liability for such claim. The grant of immunity from civil lawsuits that OHIO REV. CODE § 2744.02(A) provides to political subdivisions like Defendant City applies to Plaintiff's invasion of privacy claim as it is not an exception of § 2744.02(B) nor the exemptions of § 2744.09 to preclude immunity. *See Kohler v. City of Wapakoneta*, 381 F. Supp.2d 692, 700 (N. D. Ohio 2005).

## G. WAS DEFENDANT CITY NEGLIGENT IN ITS HIRING, SUPERVISION AND RETENTION OF ITS EMPLOYEES?

Plaintiff claims that he was subjected to improper discipline, harassment and discharge by Defendant City's supervisory staff and management. Defendant City's managerial employees had actual and construction knowledge of the lower management's incompetence and their inappropriate dealings with Plaintiff. Defendant City was negligent in hiring and retaining these supervisors, managers and human resource employees.

### 1. STANDARD FOR NEGLIGENT HIRING, SUPERVISION AND RETENTION.

Negligent hiring, retention, and supervision claims under Ohio law require proof of five elements: (1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing plaintiff's injuries; and (5) the employer's negligence in hiring or retaining the employee was the proximate cause of the plaintiff's injuries. *Hout v. City of Mansfield,* 550 F. Supp.2d 701, 745 (N. D. Ohio 2008) (*citing Linder v. American National Insurance Company,* 155 Ohio App.3d 30, 798 N.E.2d 1190, 1197 (2003)).

A plaintiff must be able to establish a tort claim against the individual employee in order to prevail in a negligent retention claim against the employer. *Id.* (*see Minnich v. Cooper Farms*, 39 Fed. Appx. 289, 295 (6th Cir. 2002); *Deters v. Rock-Tenn Company, Incorporated,* 2006 WL 2711683, *13 (S. D. Ohio 2006); *Rubin v. Ford Motor Company,* 2006 WL 2128934, *7-8 (S. D. Ohio 2006)). In claims for negligent hiring, retention, and supervision, "foreseeability [is] the test of employer liability." *Id.* (*citing Dawson v. Airtouch Cellular,* 42 F. Supp.2d 767, 772 (S. D. Ohio 1999); *Browning v. Ohio State Highway Patrol,* 151 Ohio App. 3d 798, 809-810, 786 N.E.2d 94, 103 (2003)). Where a plaintiff fails to show through evidence that the employee had any criminal or tortuous propensities, summary judgment in the employer's favor on negligent hiring and retention is proper. *Id.* (*citing Dawson*, *supra*, 42 F. Supp. at 773; *see also Myers v. Goodwill Industries of Akron,* 130 Ohio App.3d 722, 721 N.E.2d 130, 133 (1998)).

**2. DISCUSSION.**

It is undisputed that Plaintiff was an employee of Defendant. The Magistrate interprets Plaintiff's argument to suggest that Bob Holmes and Mike Konwinski were incompetent. The specific allegations against them, however, do not support Plaintiff's contentions. Bob Holmes advised Plaintiff to come into his office when problems arose but Mr. Holmes failed to appropriately manage the information given to him about Plaintiff's impairment and behavioral issues. Plaintiff knew that Mr. Konwinski labeled him as a "troublemaker." After Plaintiff's discharge, Mr. Konwinski disseminated an electronic mail message in which Plaintiff was barred from the work environment (Docket No. 50, p. 14/15; Exhibit 4). Mr. Holmes' behavior indicates a supervisor who takes precautions to address issues affecting his employees. Although Mr. Konwinski's comments about Plaintiff may be characterized as negative, Mr. Konwomski pursued an aggressive approach in controlling and/or controlling confrontations in the workplace. In either case, Plaintiff has failed to allege specific allegations of incompetence, criminal or tortious behavior. Furthermore, Plaintiff has not offered evidence that Defendant knew of the purported incompetence and failed to act appropriately on that knowledge. Unable to make a prima facie case for negligent hiring, supervision and retention, Plaintiff's claim fails.

### V. CONCLUSION

For these reasons, Defendant City's Amended Motion for Summary Judgment is granted and this case is dismissed.

**IT IS SO ORDERED**.

/s/Vernelis K. Armstrong
United States Magistrate Judge

Date: February 16, 2010